IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CAPITALIZA-T SOCIEDAD DE RESPONSABILIDAD LIMITADA DE CAPITAL VARIABLE, <br><br> Plaintiff, <br><br> v. <br><br> WACHOVIA BANK OF DELAWARE NATIONAL ASSOCIATION & WACHOVIA BANK NATIONAL ASSOCIATION, <br><br> Defendants. | HON. JEROME B. SIMANDLE <br><br> Civil No. 10-520 (JBS/KMW) <br><br><br> **OPINION** |

APPEARANCES:

Christopher D. Loizides, Esq.
LOIZIDES & ASSOCIATES
Legal Arts Building
1225 King Street, Suite 800
Wilmington, DE 19801
        -and-
Georgina Fabian, Esq.
THE INTERNATIONAL BUSINESS LAW GROUP, LLC
875 North Michigan Av., Suite 3100
Chicago, IL 60611
        -and-
Patrick M. Jones, Esq.
SMITH AMUDSEN, LLC
875 North Michigan Av., Suite 3300
Chicago, IL 60611
        Counsel for Plaintiff

Brian M. Rostocki, Esq.
Michael S. Leib, Esq.
REED SMITH LLP
1201 Market Street
Suite 1500
Wilmington, DE 19801
        Counsel for Defendants

**SIMANDLE,** District Judge:

## I.  INTRODUCTION

This matter is before the Court on Defendants' motion to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  [Docket Item 17.]  Also pending is a now-moot motion to dismiss the original complaint, [Docket Item 9], and a motion to file an additional expert report on Mexican law as a sur-reply.  [Docket Item 33.]  The principal issues raised by the motion to dismiss the Amended Complaint are: whether Delaware law recognizes a conversion claim for money deposited in an interest-bearing account; whether the Amended Complaint makes sufficient factual allegations with respect to Defendants' knowledge regarding the fraudulent scheme and breach of fiduciary duty that they are charged with aiding and abetting; and whether the allegations made in the Amended Complaint support a claim for unjust enrichment.

## II.  BACKGROUND

This case involves a Mexican currency exchange business, Casa de Cambio Majapara, S.A. de C.V. ("Majapara"), that improperly branched out beyond foreign currency exchange and into the facilitation of international transactions involving interest-bearing deposits in U.S. banks.  Specifically, even though it was beyond the company's corporate charter and not

authorized under Mexican banking laws, Majapara arranged a
transaction in which $2.5 million of Plaintiff's money was
deposited in Majapara's Mexican bank account, and then re-
deposited by Majapara in an interest-bearing account with
Wachovia Bank of Delaware in the United States.  Majapara
promised to pay Plaintiff interest on the funds.  Before the
deposit matured, however, Majapara defaulted in a separate
foreign exchange deal it had with the Delaware bank.  The current
status of the account is not alleged in the Amended Complaint,
but it appears from documents relied upon by the Amended
Complaint that Wachovia Bank of Delaware may have offset the
funds Majapara had deposited in Wachovia accounts, including
Plaintiff's funds, in order to recoup some of the Majapara debt.
(Rostocki Aff. ¶ 15.)

Plaintiff, Capitaliza-T Sociedad de Responsabilidad Limitada
de Capital Variable, a Mexican corporation, claims that Majapara
obtained the funds for this transaction by fraud.  According to
Plaintiff, Majapara represented to Capitaliza-T that it was
authorized to engage in such transactions.  Relying on this
representation, Capitaliza-T arranged a deal in which Capitaliza-
T's funds were deposited on November 26, 2007 into a Majapara
checking account denominated in U.S. dollars with Grupo
Financiero BBVA Bancomer, a Mexican bank, and then that day or
the next day withdrawn by Majapara and deposited into an account

maintained by Majapara with Wachovia Bank of Delaware in three deposit amounts of $500,000, $1,000,000 and $1,000,000, each guaranteed by Majapara to return an annual interest of 5%. (Am. Compl. ¶¶ 27-32.)

On December 3, 2007, Majapara failed to deliver the interest due on the first deposit. (Am. Compl. ¶ 36.) As it turns out, Defendants and Majapara were also engaging in a separate transaction. On December 7, 2007, Wachovia transferred 26 million Euros to Majapara as part of a series of seven foreign exchange transactions, but Majapara failed to deliver the agreed upon $38,132,700 dollars in return. (Am. Compl. ¶ 65.) On December 13, 2007, a Wachovia employee spoke with Majapara's Chairman and CEO and learned that Majapara lent the Wachovia Euros to third parties, a transaction it was not authorized to engage in. (Id. ¶ 54; Rostocki Aff ¶¶ 16-19.) The next day, on December 14, 2007, Wachovia filed an action against Majapara in the U.S. District Court for the Southern District of New York. (Am. Compl. ¶ 67.)

Plaintiff Capitaliza-T brings this suit against Wachovia Bank of Delaware, N.A., and Wachovia Bank, N.A, claiming that Defendants aided and abetted Majapara's fraud on Plaintiff by permitting Majapara to make deposits in Defendants' bank while knowing that Majapara was not authorized by law to engage in such activity, and that Wachovia is obligated to give to Plaintiff the

funds from Majapara's Wachovia account.  Plaintiff maintains that
in addition to relying on Majapara's misrepresentation about the
types of transactions it was permitted to engage in, Plaintiff
also "relied on the fact that Defendants were regulated entities
that were familiar with the scope of Majapara's permitted
operations, knowledgeable about Majapara's day-to-day
transactions, and obligated to report any suspicious activity
that fell outside the scope of Majapara's legitimate business
operations."  (Am. Compl. ¶ 26.)

According to the Amended Complaint, the allegations of which
are taken as true for the purposes of this motion, there are
reasons for Wachovia to have been generally suspicious about the
November 26-27, 2007 Majapara deposits.  In April 2006, amid
increasing concerns in the United States government regarding the
use of Mexican currency exchange businesses for money laundering
purposes, the Department of the Treasury's Financial Crimes
Enforcement Network warned Wachovia that multiple wire transfers
initiated by Mexican exchange businesses could be associated with
fraud.  (Am. Compl. ¶¶ 16-20.)  Plaintiff alleges that Majapara's
November 2007 deposits were "specifically within the type of
activities that FinCEN had warned Defendants could be associated
with fraudulent activities," and that "[o]n information and
belief, Majapara had already conducted other non-foreign currency
exchange transactions with Defendants where Defendants learned

about the fraudulent background and purpose of the transactions, concealed them, and failed to disclose them to third parties, therefore substantially assisting and/or encouraging Majapara's illegal transactions." (Am. Compl. ¶¶ 32-33.)

Plaintiff also maintains that Wachovia was obligated by federal law to file a suspicious activity report with FinCEN for these transactions. Banks must file these confidential reports if they detect a transaction involving at least $5,000 in funds or other assets, and the bank knew, suspected, or had reason to suspect that (i) the transaction was designed to evade any requirements promulgated under the Bank Secrecy Act, or (ii) the transaction had no business or apparent lawful purpose or was not the sort in which the particular customer would normally be expected to engage, and the bank knew of no reasonable explanation for the transaction after examining the available facts, including the background and possible purpose of the transaction. See 31 C.F.R. § 103.18; 12 C.F.R. § 21.11.

In the aftermath of the various transactions among the three entities in late 2007, Majapara filed for bankruptcy. On March 5, 2008, Majapara filed a petition for protection under Chapter 11 in the Federal Bankruptcy Court for the Northern District of Illinois. (Am. Compl. ¶ 71.) And on August 22, 2008, the Mexican Second Civil District Court declared Majapara's involuntary liquidation. (Am. Compl. ¶ 72.) Neither the funds

from Plaintiff nor the Wachovia account were listed as an asset
of Majapara in either proceeding, (Am. Compl. ¶¶ 71-72), but both
Plaintiff and Defendants have participated in both proceedings.
The Chapter 11 proceedings in the Northern District of Illinois
were dismissed, (Am. Compl. ¶¶ 74-75), and Chapter 15 proceedings
are currently ongoing.

Capitaliza-T brings four claims against Wachovia. Count I
claims that Wachovia converted Capitaliza-T's funds, based on
Wachovia's refusal to pay to Capitaliza-T the amounts in the
Majapara account. Count II claims that Wachovia aided and
abetted Majapara's fraud by permitting the transactions to happen
and refusing to release the funds. Count III claims that
Wachovia aided and abetted Majapara's breach of fiduciary duty.
And finally, Count IV claims that the Wachovia Defendants were
unjustly enriched. The Court has jurisdiction pursuant to 28
U.S.C. § 1332(a)(2) ("The district courts shall have original
jurisdiction of all civil actions where the matter in controversy
exceeds the sum or value of $75,000, exclusive of interest and
costs, and is between . . . citizens of a State and citizens or
subjects of a foreign state.").


III. DISCUSSION

    A. Standard of Review

    In its review of Defendants' motion to dismiss, the Court

must "accept all factual allegations as true and construe the complaint in the light most favorable to the plaintiff." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  Having done so, the Court must determine whether those facts about the conduct of each defendant present a plausible basis for relief — that is, something more than the mere possibility of legal misconduct.  See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1951 (2009).  A complaint may fail to present a plausible basis for relief either by relying on an incorrect legal theory for relief or by failing to allege sufficient facts to support a legal theory.

### B. Conversion

Generally, the deposit of funds in a bank is regarded as creating a debt on the part of the bank to the depositor rather than creating a bailee-bailor relationship with respect to the currency.  See, e.g., Geler v. National Westminster Bank, 770 F. Supp. 210, 215 (S.D.N.Y. 1991).  A conversion claim based on money deposited in an account but not returned is not recognized under Delaware law, which requires as an element of conversion the taking of specific property, and does not apply the tort to the failure to fulfill an obligation that may be met by the payment of money.  Goodrich v. E.F. Hutton Group, Inc., 542 A.2d

1200, 1203 (Del. Ch. 1988). Some states recognize a narrow exception for when the money can be described or identified as a specific chattel. Id. But Delaware courts have not yet recognized this exception. Commerce Nat. Ins. Services, Inc. v. Buchler, No. Civ. 02-037-SLR, 2003 WL 22953225, at *10 (D. Del. Dec. 10, 2003) ("No Delaware court has recognized a cause of action for conversion of money, as opposed to goods."). And even if this exception were recognized in Delaware, it would not apply to this case. Money can be identified as a specific chattel "where there is an obligation to return the identical money delivered by the plaintiff to the defendant," id., but not when any currency can generally satisfy the obligation. See Kuroda v. SPJS Holdings, L.L.C., 971 A.2d 872, 890 (Del. Ch. 2009). Thus, even assuming for the sake of argument that the money deposited into Majapara's account is owed directly to Plaintiff rather than Majapara, Plaintiff's claim does not sound in conversion.

Because the Amended Complaint fails to allege facts sufficient to state a claim for converted money, the Court need not reach Defendants' argument that Defendants were prohibited from distributing the funds in the account until the bankruptcy court determined the status of the account.

## C. Aiding and Abetting Liability

### 1. Standard

"To prove a claim of aiding and abetting, a plaintiff must demonstrate that (1) a wrongful act was committed; (2) the defendant had knowledge of the act; and (3) the defendant knowingly and substantially participated in or provided substantial assistance for the wrongful act." <u>Brug v. Enstar Group, Inc.</u>, 755 F. Supp. 1247, 1256 (D. Del. 1991) (applying Delaware law) (citing <u>Monsen v. Consolidated Dressed Beef Co.</u>, 579 F.2d 793, 799 (3d Cir. 1978)). This rule follows the Restatement (Second) of Torts, which provides that a person is liable for harm resulting to a third person from the conduct of another when he "knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself." Restatement (Second) of Torts § 876(b). Because Plaintiff fails to adequately allege the required knowledge element, the Court need not reach the other issues.

### 2. Knowledge

#### i. Standard

Although Rule 9(b) of the Federal Rules of Civil Procedure requires particularized pleading for the conduct underlying fraud claims, the rule states that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

Fed. R. Civ. P. 9(b). As the Supreme Court stated in Ashcroft v. Iqbal, however, Rule 9(b) "does not give [one] license to evade the less rigid - though still operative - strictures of Rule 8. . . . And Rule 8 does not empower respondent to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." 129 S. Ct. 1937, at 1954 (2009). Consequently, for both of the aiding and abetting claims, the Court must determine whether Plaintiff's allegations regarding actual knowledge meet the requirements of Rule 8.

At least before Iqbal, there was a difference between the Second and Third Circuits' readings of Rule 9(b) in this respect, which distinguishes some of the cases upon which both parties rely. Compare Institutional Investors Group v. Avaya, Inc., 564 F.3d 242, 253 (3d Cir. 2009) (distinguishing pleading that satisfies Rule 9(b) from higher standard of pleading in which it is necessary to raise a strong inference that the defendant had a particular state of mind) with Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1129 (2d Cir. 1994) (interpreting Rule 9(b) to require specific pleading of facts sufficient to give rise to strong inference of mental state); see also City of Roseville Employees' Retirement System v. Horizon Lines, Inc., 686 F. Supp. 2d 404, 414 (D. Del. 2009) (noting that a plaintiff may plead

scienter generally under Rule 9(b), as distinct from the showing necessary in securities law).

To comply with Rule 8, Fed. R. Civ. P., the Complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). And as described above, to survive a challenge under Rule 12(b)(6), Fed. R. Civ. P., the factual allegations must present a plausible basis for relief. See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1951 (2009).

The kind of scienter required for aiding and abetting claims is actual knowledge. The "universal rule requires actual knowledge of the tortious conduct by the wrongdoer, not merely that the defendant knew something was wrong in general." El Camino Resources, LTD. v. Huntington Nat. Bank, 722 F. Supp. 2d 875, 905-10, 922 (W.D. Mich. 2010) (collecting cases); see also Brug v. Enstar Group, Inc., 755 F. Supp. 1247, 1256 (D. Del. 1991) (requiring that, at a minimum, the complaint allege circumstantial facts suggesting that the defendant had knowledge of the specific principal violation).

To the extent there is any ambiguity in the Delaware common law concerning the sufficiency of constructive knowledge or willful blindness, there is no doubt that where the substantial assistance is permitting money to be deposited in a bank, actual knowledge on the part of the bank is required. Indeed, according

to one line of cases applying New York law, permitting deposits is never sufficient to constitute substantial assistance.  See, e.g., Rosner v. Bank of China, 528 F. Supp. 2d 419, 426-27 (S.D.N.Y. 2007).  Other courts that have offered a less restrictive jurisprudence than New York's have held that permitting deposits can constitute substantial assistance when there is actual knowledge that the transactions are assisting a specific principal violation.  See El Camino, 722 F. Supp. 2d at 910-11; Casey v. U.S. Bank National Ass'n, 26 Cal. Rptr. 3d 401, 406 (Cal. App. 4 Dist. 2005); In re First Alliance Mortg. Co., 471 F.3d 977, 995 (9th Cir. 2006).  Thus, even if Delaware were to follow the less restrictive line of cases, the minimum requirement would be actual knowledge that the transactions are assisting a specific principal violation.

ii.  Application

The factual averments regarding Defendants' knowledge of Majapara's fraud and breach of fiduciary duty include: that Defendants knew that Majapara was operating beyond its corporate charter and Mexican law (Am. Compl. ¶¶ 32-33, 93);  that, "[o]n information and belief, Majapara had already conducted other non-foreign currency exchange transactions with Defendants where Defendants learned about the fraudulent background and purpose of the transactions, concealed them, and failed to disclose them to

third parties" (Am. Compl. ¶¶ 33.); that Defendants knew of
numerous "red flags" that suggested that the transfer was illicit
(Am. Compl. ¶ 93(f)); that Defendants knew that similar transfers
initiated by currency exchange firms were fraudulent (Am. Compl.
¶¶ 18-19); that in December 2007 Majapara informed Defendants
that it loaned Wachovia's money from the currency exchange deal
to third parties instead of exchanging it, defrauding Wachovia.
(Am. Compl. ¶ 93(d), (e) (citing Rostocki Aff. ¶¶ 19-21)); and
that, in 2009, Plaintiff informed Defendants that the funds
deposited by Majapara in November 2007 were the proceeds of fraud
(Am. Compl. ¶¶ 84, 93(e)).

Neither these allegations nor any other allegations in the
Amended Complaint state that Wachovia was aware of the existence
of Capitaliza-T during the time period in which it needs to have
had that knowledge. See Jenkins v. Williams, Civil Action No.
02-331-GMS, 2008 WL 1987268, at *14 (D. Del. May 7, 2008) ("There
must be a clear nexus between the knowledge of the wrong and the
substantial assistance in carrying out the wrong."). Plaintiff's
sole allegation that Defendants were aware of Capitaliza-T's
existence as the source of the funds, prior to Capitaliza-T's
request for return of the funds some two years later, is
contained in paragraph 83. (Am. Compl. ¶ 83.) That paragraph
states, "Plaintiff can identify the Funds in the WBD Account
[sic.]. On information and belief, when Majapara transferred the

Funds to Defendants, it identified the Funds as Plaintiff's Funds." (Id.)  It is unclear what Plaintiff means by this "on information and belief" allegation.  When asked at oral argument to point out any part of the Amended Complaint alleging that Defendants were aware of Plaintiff in 2007, Plaintiff's counsel did not refer to this paragraph.  Moreover, this paragraph is only incorporated into the conversion claim, suggesting it was not intended to support the aiding and abetting claims.

Even assuming that a plausible reading of Amended Complaint is that Defendants were aware of Capitaliza-T's existence, the Amended Complaint still does not contain any factual allegations suggesting that Defendants knew in 2007 that Capitaliza-T had been defrauded, or been the victim of a breach of fiduciary duty. The Amended Complaint does contain allegations that Defendants knew that Majapara was engaging in transactions that exceeded its authorization under Mexican law, and allegations that Defendants knew or should have known that the transactions raised suspicions about money laundering or fraud generally.  But such general knowledge of other kinds of illicit behavior is not the equivalent of awareness of the actual principal violation here: that Majapara had misled Capitaliza-T into entering the November 2007 transaction.

If Plaintiff's efforts to recover the funds in 2009 combined with the bank's refusal to turn them over met the elements of

aiding and abetting because the bank was then on notice of the principal violation, then the allegations in the Amended Complaint would be sufficient with respect to the nexus between the knowledge and the conduct. But the problem with the claim framed this way is the disconnect between the alleged substantial assistance and the principal violation. The tort of aiding and abetting requires that the conduct substantially assist the principal violation. See <u>Brug</u>, 755 F. Supp. at 1256. The principal violations — fraud and breach of fiduciary duty — occurred, at the latest, when Majapara defaulted on the deal, at which time all of the conduct and injury underlying the violations had occurred. Indeed, it is likely that both torts were complete even before the money was deposited into the Wachovia Bank of Delaware account. Majapara was neither aided nor affected by Defendants' 2009 conduct, by which time Majapara was already in bankruptcy. Refusing to release the funds cannot have assisted either principal violation. See <u>Lindsay v. Lockwood</u>, 625 N.Y.S.2d 393, 397 (N.Y. Sup. Ct. 1994) (explaining that the tort requires both "the defendant's awareness of a role as part of an overall illegal or tortious activity at the time he provides the assistance" and "substantial assistance in the principal violation"). This is consistent with the distinction long-recognized in criminal law between aiding and abetting, which requires concurrency of the underlying crime and the

16

assistance, and accessory after the fact, which does not.  See
United States v. Irving, 437 F.2d 649, 650 (1970).

Accordingly, the Court finds that the Amended Complaint
fails to plead facts sufficient to allege that Defendants had
knowledge of the underlying fraud and breach of fiduciary duty
for purposes of aiding and abetting liability under Delaware law.
Since the Court need not reach the issue of whether Mexican law
would recognize a fiduciary relationship in this case in order to
resolve the motion to dismiss, the motion to add the surreply to
the record is moot.


**D. Unjust Enrichment**

The elements of an unjust enrichment claim in Delaware are
"(1) an enrichment; (2) an impoverishment; (3) a relation between
the enrichment and the impoverishment; (4) the absence of
justification; and (5) the absence of a remedy provided by law."
B.A.S.S. Group, LLC v. Coastal Supply Co., Inc., Civil Action No.
3743-VCP, 2009 WL 1743730, at *6 (Del. Ch. June 19, 2009).

Plaintiff deposited the funds in question in this case in
Majapara's Mexican bank account.  (Am. Compl. ¶ 28.)  The next
day, Majapara then deposited the funds into a Wachovia Bank of
Delaware account maintained by Majapara.  (Am. Compl. ¶ 31.)
Absent evidence otherwise, and especially for an interest-bearing
account, it is presumed that depositing money into a bank account

creates a contractual debt obligation.  <u>Peoples Westchester Sav.</u>
<u>Bank v. F.D.I.C.</u>, 961 F.2d 327, 331 (2d Cir. 1992) ("Fact that
bank pays interest on account is very strong evidence that title
to money deposited passed out of depositor by act of making
deposit, and thus that creation of general deposit was intended
by parties; depositor receives interest in return for loaning
money to bank so that bank may use funds for its own
investments."); <u>Geler</u>, 770 F. Supp. at 215; 26B C.J.S.
Depositaries § 9 ("A contractual relationship is created by a
voluntary deposit.").  The relationship between depositor and
bank in this situation is governed by contract, whether implied
or express.  <u>See</u> <u>Symanski v. First Nat. Bank of Danville</u>, 609
N.E.2d 989, 991 (Ill. App. 1993) ("The bank-depositor /
debtor-creditor relationship arises from and is regulated by a
contract, rather than by ownership of the funds. . . . It is a
fundamental principle of banking law that the relationship
between a bank and its depositor is created and regulated by the
express or implied contracts between them.").  Consequently,
refusal to return funds in an account to a depositor is "neither
a taking of possession of . . . property nor an exercising of
control over it, but merely a refusal to perform its promise."
<u>Citizens Bank of Maryland v. Strumpf</u>, 516 U.S. 16, 21 (1995).

     To the extent Plaintiff has any claim to the money in the
Wachovia account, it is not a claim to a certain number of

particular dollar bills over which it once had title; instead, Plaintiff is potentially entitled to payment in a certain amount based on a contract created by the deposit of Plaintiff's funds. Consequently, the facts of this case must be analyzed as a cascade of contractual obligations.

At oral argument, Plaintiff's counsel maintained that Majapara was acting as Capitaliza-T's agent, despite the fact that Plaintiff "deposited the Funds in Majapara's account at Bancomer in return for a fixed term annual yield of return," (Am. Compl. ¶ 102) and the fact that the funds were then placed in Majapara's Wachovia account. But regardless of how Majapara's relationship with Capitaliza-T is characterized, no action for unjust enrichment lies here. A contract was either created between Majapara and Wachovia Bank of Delaware for the benefit of Plaintiff, or directly between Capitaliza-T and Wachovia Bank of Delaware based on Majapara's actions as agent. Either way, it is that contract, implied or express, that determines who, if anyone, is entitled to the funds in the Wachovia account. See Kuroda v. SPJS Holdings, L.L.C., 971 A.2d 872, 891 (Del. Ch. 2009) ("A claim for unjust enrichment is not available if there is a contract that governs the relationship between parties that gives rise to the unjust enrichment claim."); Westerly Community Credit Union v. Industrial Nat. Bank of Providence, 240 A.2d 586, 668-669 (R.I. 1968) (explaining that whether the deposit can be

offset based on Majapara's debt would depend on the nature of the
contract and the bank's level of knowledge about Capitaliza-T's
role in the deposit).

The Amended Complaint presents no reason to think that the
contract created by the deposit, as distinct from the contract
between Majapara and Capitaliza-T, is void.  If Majapara was not
acting as Capitaliza-T's agent, then the contract created by the
deposit is between Majapara and the bank.  Under both Mexican and
Delaware law, if Majapara was merely acting as Capitaliza-T's
agent, then the voidability of their agency agreement has no
effect on the contract created between Capitaliza-T and Wachovia
Bank of Delaware.  This is because that agreement would be
voidable, but not yet voided when the agent bound the principal.
See Associated Hardware Supply Co. v. Big Wheel Distributing Co.,
355 F.2d 114, 120 (3d Cir. 1965) (holding that fraud in the
inducement does not render the transaction void, but only
voidable); Restatement (Second) of Agency § 15 cmt. c (1958) ("As
in the case of any other agreement, one or both of the parties
may have entered into it by mistake resulting from fraud or
otherwise.  Where this is true, the agreement may be voidable by
the one mistaken.  However, until the agreement is rescinded, the
relation continues and acts done in pursuance of it are effective
as to third persons."); Código Civil Federal [C.C.F.] [Federal
Civil Code], Art. 2226, as amended, Diario Oficial de la

Federación [D.O.], 31 de Diciembre de 2004 (Mex.) (explaining that a contract is not a nullity until declared to be so by a judge). In either scenario, there is a valid contract governing the Wachovia account, and Capitaliza-T has a remedy against Majapara, and potentially a remedy at law against Defendants, but does not have a claim for unjust enrichment under Delaware law.

## IV.    CONCLUSION

Delaware law does not recognize Plaintiff's claim for conversion based on the refusal to pay funds from a bank account. Seeing no possible facts that could be pleaded to state a claim on this count, it will be dismissed with prejudice.

Plaintiff's allegations regarding the aiding and abetting claims do not currently provide a plausible basis for believing that Defendants knew that Capitaliza-T had defrauded Plaintiff and breached a duty to Plaintiff in the way that Plaintiff alleges. And Plaintiff's unjust enrichment claim is unavailable because the bank's obligation to pay the funds (or lack thereof) is governed by the contract created by the deposit, and the Amended Complaint provides no reason for thinking that the bank contract is not operative.

It may be possible that an amended pleading could cure the deficiencies noted in the aiding and abetting and unjust

enrichment claims — such as by Plaintiff pleading concrete reasons for believing Defendants knew of the underlying transaction, or offering additional information regarding the bank account contract not contained in the current pleadings. Therefore, these latter three claims will be dismissed without prejudice.  See Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) ("We have held that even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile.").  The accompanying Order will be entered.


**March 9, 2011**                              **s/ Jerome B. Simandle**
Date                                  JEROME B. SIMANDLE
                                      United States District Judge