IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| CAPITALIZA-T SOCIEDAD DE RESPONSABILIDAD LIMITADA DE CAPITAL VARIABLE,<br><br>       Plaintiff,<br><br>   v.<br><br>WACHOVIA BANK OF DELAWARE NATIONAL ASSOCIATION & WACHOVIA BANK NATIONAL ASSOCIATION,<br><br>       Defendants. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | HON. JEROME B. SIMANDLE<br><br>Civil No. 10-520 (JBS/KMW)<br><br><br>**<u>OPINION</u>** |

APPEARANCES:

Christopher D. Loizides, Esq.
LOIZIDES & ASSOCIATES
Legal Arts Building
1225 King Street, Suite 800
Wilmington, DE 19801
    -and-
Georgina Fabian, Esq.
THE INTERNATIONAL BUSINESS LAW GROUP, LLC
875 North Michigan Av., Suite 3100
Chicago, IL 60611
    -and-
Patrick M. Jones, Esq.
SMITH AMUDSEN, LLC
875 North Michigan Av., Suite 3300
Chicago, IL 60611
    Counsel for Plaintiff

Brian M. Rostocki, Esq.
Michael S. Leib, Esq.
REED SMITH LLP
1201 Market Street
Suite 1500
Wilmington, DE 19801
    Counsel for Defendants

**SIMANDLE,** District Judge:

## I.   INTRODUCTION

This matter is before the Court on Plaintiff Capitaliza-T Sociedad de Respnsabiliad Limitada De Capital Variable's ("Plaintiff" or "Capitaliza-T") Motion for Leave to File a Second Amended Complaint [Docket Item 41] in response to this Court's earlier dismissal of the First Amended Complaint for failure to state a claim [Docket Item 38].  In its proposed Second Amended Complaint, the Plaintiff alleges causes of action against Defendants Wachovia Bank of Delaware National Association and Wachovia Bank National Association ("Defendants") for aiding and abetting fraud, aiding and abetting breach of fiduciary duty, breach of contract and unjust enrichment arising out of the receipt of moneys on deposit and refusal to return the money deposited to the Plaintiff.

The Court previously granted Defendants' motion to dismiss the First Amended Complaint which alleged causes of action against the Defendants for conversion, aiding and abetting fraud, aiding and abetting breach of fiduciary duty and unjust enrichment.  The Court explained in its opinion that the conversion claim would be dismissed with prejudice as futile. The aiding and abetting claims and unjust enrichment claim were dismissed without prejudice to Plaintiff moving to file a second amended complaint that corrected the noted deficiencies. [Docket

2

Item 38.]

For the reasons expressed below, the Court will deny Plaintiff's motion to file a second amended complaint with regards to the aiding and abetting breach of fiduciary duty claim. The Court will grant Plaintiff's motion with regards to the aiding and abetting fraud claim, breach of contract claim and unjust enrichment claim. However, the breach of contract claim and the unjust enrichment claim will be stayed pending the resolution of the Mexican Bankruptcy proceeding of the entity, Casa de Cambio Majapara, S.A. de C.V., with which Plaintiff entrusted the Funds that are the subject of this suit as discussed below.

## II. BACKGROUND

### A. Facts

The facts underlying this action were set forth in the Court's previous opinion in this matter. [Docket Item 37.] The instant action arose from the Plaintiff's $2.5 million transaction with a Mexican currency exchange business, Casa de Cambio Majapara, S.A. de C.V. ("Majapara") and Majapara's subsequent transaction with the Defendants which involved placing Plaintiff's funds on deposit in Majapara's bank account.

In September 2006, the Plaintiff, a corporation organized under the laws of and with its principal place of business in

Mexico, started operations for the purchase-sale of foreign currency with Majapara, also a Mexican corporation. (Second Am. Comp. ¶¶ 1, 7, 32). Plaintiff carried out between two and three transactions per week involving the purchase and sale of U.S. dollars and other foreign currencies through Majapara. (Id.)

In November 2007, the Plaintiff met with representatives at Majapara to discuss the possibility of Majapara handling deposits on behalf of the Plaintiff. (Id. at ¶ 33.) Majapara represented to the Plaintiff that it was in the process of obtaining authorization from the Mexican National Banking and Securities Commission, the Mexican Ministry of Finance and Public Credit and Mexico's Central Bank to become a stock brokerage firm and charge industry commission rates for that service. (Id.) Majapara explained that it would accept deposits in U.S. dollars from the Plaintiff and would then place those deposits in a special account at Wachovia Bank of Delaware National Association ("Defendant WBD" or "WBD") or Wachovia Bank National Association ("Defendant Wachovia" or "Wachovia"). (Id. at ¶ 34.) Majapara told the Plaintiff that each deposit would return an annual interest of five percent and the deposits would be made to Wachovia or WBD. (Id.) The Plaintiff agreed to allow Majapara to handle $2.5 million in deposits once Majapara received the authorization to become a stock brokerage firm. (Id. at ¶ 35.)

Later in November 2007, Majapara told the Plaintiff that it

had received the proper authorization and could operate as a stock brokerage firm (Id. at ¶ 35.)  The Plaintiff then made three deposits totaling $2.5 million into Majapara's checking account with the understanding that Majapara would then place the funds into a special account with WBD or Wachovia which would return an annual interest rate of five percent.  All three deposits were made by the Plaintiff on November 26, 2007 under the following terms:

$500,000 deposit made for a seven-day term;

$1,000,000 deposit made for a 30-day term;

$1,000,000 deposit for a 15-day term.

(Id. at ¶¶ 35, 36) (hereinafter "the Funds.")

Later that same day, Majapara confirmed the acceptance of Plaintiff's Funds into its bank account. (Id. at ¶ 38.)  On or around November 26-27, 2007, pursuant to Plaintiff's instructions, Majapara deposited the Funds into a WBD account pursuant to the terms of a special deposit agreement. (Id. at ¶ 39.)  On November 27, 2007, Majapara sent the Plaintiff a confirmation that the Funds had been transferred to the WBD account. (Id. at ¶ 41.)

On December 3, 2007, the interest was due on the first deposit of $500,000.  Majapara did not deliver this interest and claimed their failure was due to the Defendants' refusal to pay the interest.  (Id. at ¶ 44.)  The Plaintiff granted Majapara an

additional 15 days to collect the interest payment, otherwise, Majapara would have to return the entire $2.5 million principal. (<u>Id.</u>)

The Defendants did not make any of the interest payments due on any of the deposits in December 2007. (<u>Id.</u> at ¶ 45.) On December 3, 2007, Majapara requested that the Defendants return not only the interest owed on Plaintiff's funds but also the principal amount of Plaintiff's funds. (<u>Id.</u> at ¶ 67.)  The Defendants refused to do so. (<u>Id.</u>)

Simultaneously, in December 2007, Majapara and Wachovia agreed to a series of seven foreign exchange transactions where Wachovia would deliver an aggregate 26 million Euros to Majapara and Majapara would deliver an aggregate $38,132,700 to Wachovia. (<u>Id.</u> at ¶ 53.)  This transaction was to settle on December 7, 2007. (<u>Id.</u>)  On the settlement date, Wachovia delivered 26 million Euros to Majapara but Majapara failed to deliver any sum to Wachovia. (<u>Id.</u> at ¶ 54.)

Wachovia immediately filed an action against Majapara in the United States District Court for the Southern District of New York on December 17, 2007. (<u>Id.</u> at ¶ 56.)  As a result, the Court imposed a levy on Majapara's accounts at several banks; however, this levy did not include Defendant WBD. (<u>Id.</u> at ¶ 57.)

In January 2008, the Plaintiff contacted Majapara and requested the immediate withdrawal of its $2.5 million deposits

6

from WBD. (Id. at ¶¶ 47, 48.) Majapara representatives then met with the Plaintiff and disclosed that Majapara was not authorized to carry out these types of transactions as previously represented. (Id. at ¶ 49.) In late January 2008, Majapara's offices were closed by the Mexican National Banking Securities Commission. (Id. at ¶ 50.) In March 2008, the Plaintiff filed criminal charges against Majapara in Mexico. (Id. at ¶ 51.)

Also, in March 2008, Majapara filed for bankruptcy under Chapter 11 in the United States Bankruptcy Court for the Northern District of Illinois. (Id. at ¶ 60.) Neither the Plaintiff's $2.5 million funds nor the WBD account were listed as assets of Majapara's Chapter 11 bankruptcy estate. (Id.)

On August 22, 2008, the Mexican Second Civil District Court declared Majapara's involuntary liquidation.  (Id. at ¶ 61.) The WBD account was not listed as an asset in this bankruptcy proceeding either.  (Id.)  On December 18, 2008, the United States Bankruptcy Court for the Northern District of Illinois issued an order recognizing the Mexican liquidation proceeding as a foreign main proceeding under Chapter 15. (Id. at ¶ 62; Rostocki Aff., Ex. 4.)  On January 15, 2009, the Northern District of Illinois entered an order dismissing the Chapter 11 Case and granting related relief pursuant to 11 U.S.C. § 1521. (Rostocki Aff., Ex. 5 Docket Item 39.)

On December 14, 2009, the Plaintiff sent Defendant WBD a

letter explaining the nature of Majapara's fraud on the Plaintiff and demanding the immediate return of the Plaintiff's $2.5 million deposits plus interest. (<u>Id.</u> at ¶ 64.)  Defendants refused to return the funds.  (<u>Id.</u> at ¶ 65.)

Both Plaintiff and Defendants participated in the U.S. Bankruptcy case and both parties are currently still participating in the Mexican Bankruptcy proceedings. (Rostocki Aff., Ex. 5 at D.I. 4, 7-8, 25 and Ex. 6.)  On December 23, 2010, the Defendants executed a settlement agreement before the Mexican Bankruptcy Court; however, the Defendants still remain common creditors in the Mexican Bankruptcy proceedings.  (<u>Id.</u> at ¶ 66.)

The Plaintiff filed a claim in the Mexican Bankruptcy proceeding stating that the Plaintiff was owed $2.5 million plus interest from Majapara's estate. (Rostocki Aff., Ex. 6 at 25.) This claim was granted and the Second District Court on Civil Matters in Mexico City recognized the Plaintiff's debt of $2.5 million plus interest against Majapara's estate on April 7, 2009. (Rostocki Aff., Ex. 6 at 35-36.)

The Plaintiff filed the instant action against the Defendants on June 11, 2010, alleging unjust enrichment, conversion, breach of contract, and conspiracy to commit fraud. [Docket Item 1.]  The Plaintiff sought relief in the form of an order granting judgment against the Defendants in the amount of $2.5 million plus all accrued interest, costs and attorneys' fees

or in the alternative an order imposing a constructive trust over the funds in possession of WBD. [Docket Item 1.]  Majapara is not a party to this action.

**B. Procedural History**

This is Plaintiff's third proposed complaint in this action. After filing its original complaint, the Defendants moved to dismiss the Complaint for failure to state a claim. [Docket Item 9.]  Rather than respond to the Defendants' motion, the Plaintiff filed an Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(1) which alleged causes of action against the Defendants for conversion, aiding and abetting fraud, aiding and abetting breach of fiduciary duty and unjust enrichment.  [Docket Item 16.]  The Defendants filed a second motion to dismiss for failure to state a claim. [Docket Item 17.]

The Court held oral argument and subsequently granted the Defendants' motion to dismiss.  The Court issued an Opinion discussing the deficiencies of the Plaintiff's pleading. [Docket Items 37.]  The Court explained in its Opinion that the conversion claim was futile because Delaware law does not recognize a claim for conversion based on the refusal to pay funds from a bank account.  As a result, this claim was dismissed with prejudice.  As to the aiding and abetting claims, the Court found that the Plaintiff's complaint did not provide a plausible basis for believing Defendants knew of the underlying fraudulent

transaction.  Finally, the Court dismissed the unjust enrichment claim because the Plaintiff had presented no allegations suggesting the bank contract created by the deposit was not operative, and therefore, an unjust enrichment claim was unavailable.  [Docket Item 37.] The aiding and abetting claims as well as the unjust enrichment claims were dismissed without prejudice to Plaintiff moving to file a second amended complaint that corrected the above deficiencies. [Docket Item 38.]

The Plaintiff then filed the instant Motion for Leave to File a Second Amended Complaint.  The Plaintiff alleges in its third proposed pleading causes of action for aiding and abetting fraud, aiding and abetting breach of fiduciary duty, breach of contract and unjust enrichment.  The Defendant filed opposition to this motion. [Docket Item 45.]  For the reasons discussed below, this motion will be denied in part and granted in part.


III.  DISCUSSION

A.  Standard of Review

Rule 15(a)(2), Fed. R. Civ. P., provides that leave to amend should be freely given when justice so requires.  The decision to permit amendment is discretionary.  Toll Bros., Inc. v. Township of Readington, 555 F.3d 131, 144 n. 10 (3d Cir. 2009).  Among the legitimate reasons to deny a motion is that the amendment would be futile.  Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir. 1993)

(citation omitted). Futility is determined by the standard of legal sufficiency set forth in Rule 12(b)(6), Fed. R. Civ. P. In re Burlington Coat Factory Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). Accordingly, an amendment is futile where the complaint, as amended, would fail to state a claim upon which relief could be granted. Id.

A complaint sufficiently states a claim when it alleges facts about the conduct of each defendant giving rise to liability. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). These factual allegations must present a plausible basis for relief (i.e., something more than the mere possibility of legal misconduct). See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1951 (2009). In assessing the complaint, the Court must "accept all factual allegations as true and construe the complaint in the light most favorable to the plaintiff." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

**B. Discussion**

The Court will separately analyze each of the Plaintiff's claims alleged in the proposed Second Amended Complaint.

### 1. Aiding and Abetting Fraud

"To prove a claim of aiding and abetting, a plaintiff must demonstrate that (1) a wrongful act was committed; (2) the defendant had knowledge of the act; and (3) the defendant

11

knowingly and substantially participated in or provided substantial assistance for the wrongful act."  Brug v. Enstar Group, Inc., 755 F. Supp. 1247, 1256 (D. Del. 1991) (applying Delaware law) (citing Monsen v. Consolidated Dressed Beef Co., 579 F.2d 793, 799 (3d Cir. 1978)).  This rule follows the Restatement (Second) of Torts, which provides that a person is liable for harm resulting to a third person from the conduct of another when he "knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself."  Restatement (Second) of Torts § 876(b).

There is no dispute that the complaint sufficiently pleads the first element of aiding and abetting fraud.  The complaint clearly states that Majapara committed a fraud against the Plaintiff by intentionally misrepresenting to the Plaintiff that it was authorized to operate as a stock brokerage firm and manage Plaintiff's deposits; Majapara's intent to induce Plaintiff's reliance on this misrepresentation; Plaintiff's deposit of $2.5 million into Majapara's account as a result of this reliance; and Plaintiff's resulting damage in the amount of $2.5 million plus interest. (Second Am. Comp. ¶¶ 80-84, 90).

The issue is whether the Plaintiff has pled sufficient factual allegations under Fed. Rule Civ. P. 8 to show that Defendants had knowledge of Majapara's fraud on the Plaintiff and

whether the Defendants knowingly and substantially participated
in or provided substantial assistance to Majapara in defrauding
the Plaintiff.  The Court will first address the substantial
assistance requirement.

a. Substantial Assistance

In order to meet the substantial assistance element,
"plaintiffs must plead that the defendants who served as
secondary actors consciously participated in the fraudulent acts.
This element may also be met by inaction, but only if the
inaction was consciously intended to aid the fraud." Brug v. The
Enstar Group, Inc., 755 F. Supp. 1247, 1256 (D. Del. 1991).

In this case, the Plaintiff has pled that the Defendants
substantially assisted Majapara in committing fraud against the
Plaintiff and other third parties who were customers of Majapara
in numerous ways.  The Plaintiff alleges that the Defendants:
(1) satisfied all of Majapara's financing needs; (2) concealed
the origin, background and nature of Majapara's non-foreign
currency exchange transactions and specifically concealed the
nature of the November 26-27, 2007 transaction involving
Plaintiff's Funds; (3) imbued Majapara with an air of legitimacy
to the detriment of Plaintiff and other Majapara customers; (4)
consciously failed to disclose Majapara's atypical transactions
because the Defendants derived substantial profits from
Majapara's fraudulent activity; and (5) knew about the fraud

committed on the Plaintiff and failed to disclose it despite having a duty to disclose it. (Second Am. Comp. ¶ 87.)

These factual allegations present a plausible basis for the substantial assistance element of aiding and abetting. The Plaintiff specifically alleges that the Defendant concealed the nature of the November 26-27, 2007 transaction and Defendants' inaction in failing to report Majapara's atypical transaction was consciously done because the Defendants profited substantially from Majapara's fraudulent activity. This is sufficient to meet the pleading requirements of the substantial assistance element of aiding and abetting fraud.

b. Knowledge

The second requirement of knowledge of the wrongful act "is a critical element in the proof of aiding-abetting liability, for without this requirement financial institutions, brokerage houses, and other such organizations would be virtual insurers of their customers against security law violations." Brug v. The Enstar Group, Inc., 755 F. Supp. 1247, 1256 (D. Del. 1991).

Aiding and abetting claims require actual knowledge. The "universal rule requires actual knowledge of the tortious conduct by the wrongdoer, not merely that the defendant knew something was wrong in general." El Camino Resources, LTD. v. Huntington Nat. Bank, 722 F. Supp. 2d 875, 905-10, 922 (W.D. Mich. 2010) (collecting cases). In addition, "[t]here must be a clear nexus

between the knowledge of the wrong and the substantial assistance in carrying out the wrong." <u>Jenkins v. Williams</u>, No. 02-331, 2008 WL 1987268 (D. Del. May 7, 2008).

When aiding and abetting fraud is alleged, actual knowledge can be inferred when the Plaintiff's pleading alleges that atypical financing transactions were involved, the Defendants should have known of the alleged fraud and the factual allegations support a finding of substantial assistance. <u>Brug</u>, 755 F. Supp. at 1256.

In this case, the Plaintiff alleges that atypical financing transactions were involved. The Plaintiff supports this conclusion with the following factual allegations: (1) Defendants knew that Majapara's corporate purpose did not include accepting and handling deposits on behalf of third parties (Second Am. Comp. ¶ 86); (2) Defendants knew that Majapara was not licensed and/or registered as a stock brokerage firm that would handle deposits on behalf of the third parties (<u>id.</u>); (3) Defendants knew that the November 26-27, 2007 transaction involving Plaintiff's Funds were unrelated to any concomitant currency exchange transaction or to Majapara's currency exchange business (<u>Id.</u>); (4) the November 26-27, 2007 transaction with Plaintiff's Funds totaled $2.5 million which exceeds the $5,000 notice threshold requiring the Defendants to file a Suspicious Activity Report pursuant to the Bank Secrecy Act, 31 U.S.C. § 5311, et

seq.[1] (_Id._ at ¶ 73).

The Plaintiff also alleged that the Defendants should have known of the alleged fraud and states the following factual allegations in support thereof: (1) Defendants were aware of numerous red flags that existed with respect to the non-currency exchange transactions (Sec. Am. Comp. ¶ 86); (2) Defendants were specifically warned by the Financial Crimes Enforcement Network to pay special attention to transactions such as the ones between Majapara and WBD because of their fraudulent nature (_id._); (3) Defendants knew that the November 26-27, 2007 transaction involving Plaintiff's Funds was unrelated to any legitimate business purpose of Majapara. (_Id._)

These factual allegations, in conjunction with the Plaintiff's allegations which support a finding of substantial assistance, present a plausible basis for relief and satisfy the requirements of Rule 8. The Plaintiff's Second Amended Complaint provides sufficient factual allegations to support Plaintiff's

---

[1] The Bank Secrecy Act, 31 U.S.C. § 5311, _et_ _seq._, requires domestic banks and other financial institutions, such as the Defendants, to maintain programs designed to detect and report suspicious activity that is indicative of financial crimes, such as fraud. _See_ 31 U.S.C. § 5318(g). The Code of Federal Regulations expressly provides that national banks are required to file a Suspicious Activity Report when there is a transaction "aggregating $5,000 or more" and "the bank knows, suspects or has reason to suspect that the transaction has no business or apparent lawful purpose or is not the sort in which the customer would normally be expected to engage. . ." 12 C.F.R. § 21.11(c)(4)(iii).

claim that the Defendant should have known about the fraud committed by Majapara, the Defendants substantially assisted Majapara in committing the fraud on the Plaintiff, and atypical financing transactions were involved. These allegations provide a plausible basis for the inference of actual knowledge on the part of the Defendants to meet the second element of aiding and abetting fraud.

Therefore, the Court will grant Plaintiff's Motion for Leave to File a Second Amended Complaint with regard to the aiding and abetting fraud claim.

### 2. Aiding and Abetting Breach of Fiduciary Duty

To prove a claim for aiding and abetting a breach of fiduciary duty under Delaware law, a plaintiff must show four elements. The elements are (1) the existence of a fiduciary relationship; (2) the fiduciary breached its duty; (3) knowing participation in the breach by the non-fiduciary; and (4) damages to the plaintiff resulting from the concerted action of the fiduciary and the non-fiduciary. Gotham Partners, L.P. v. Hallwood Realty Partners, L.P., 817 A.2d 160, 172 (Del. 2002).

In this case, the first element is properly pled as the Plaintiff alleges that it established a fiduciary relationship with Majapara by allowing Majapara to assume control over the Plaintiff's Funds on behalf of the Plaintiff. (Sec. Am. Comp. ¶ 96). This is supported by the factual allegation that Plaintiff

deposited $2.5 million into Majapara's account with the understanding that Majapara was an authorized stock brokerage firm. (Id. at ¶ 37).

The Plaintiff claims that Majapara breached the fiduciary duty it owed to the Plaintiff by failing to return the Plaintiff's Funds and allowing Defendants to utilize the Funds for their own use and benefit. (Sec. Am. Comp. ¶ 97.) However, this claim is unsupported by the factual allegations in the complaint. The factual allegations indicate that Majapara did everything the Plaintiff requested it do with the Funds, including depositing the Funds into Defendant WBD's account. Furthermore, the only reason the Funds were not returned to the Plaintiff, according to the proposed Second Amended Complaint, was because the Defendants allegedly refused Majapara's demands that the funds be returned. (Id. at ¶¶ 39, 44, 106). There are no factual allegations supporting the conclusion that Majapara allowed the Defendants to keep the Funds or use them for their own benefit. As a result, the Plaintiff's Second Amended Complaint does not support a plausible basis for finding a breach of fiduciary duty.

In addition, the Plaintiff claims Majapara breached its fiduciary duty by misrepresenting to the Plaintiff that it was authorized to operate as a stock brokerage firm. This misrepresentation, while sufficient to show the Plaintiff was

defrauded, occurred prior to the Plaintiff depositing its Funds into Majapara's account and therefore happened prior to the creation of a fiduciary relationship between the Plaintiff and Majapara.  No fiduciary relationship existed between the Plaintiff and Majapara at the time of Majapara's misrepresentation.

"Indeed, under established Delaware law, a breach of fiduciary duty claim must be based on an actual, existing fiduciary relationship . . . at the time of the alleged breach." Omnicare, Inc. v. NCS Healthcare Inc., 809 A.2d 1163,1169 (Del. Ch. 2002).  Consequently, Majapara's misrepresentation that it was authorized to operate as a stock brokerage firm is insufficient to show a breach of fiduciary duty as it occurred prior to the establishment of a fiduciary relationship between the Plaintiff and Majapara.

Therefore, the Plaintiff has failed to allege facts sufficient to support a plausible basis for finding that Majapara breached a fiduciary duty to the Plaintiff.  Accordingly, the third element of the Defendants' knowing participation in the breach also fails.[2]

Therefore, the Court will deny Plaintiff's Motion for Leave

---

[2] The Court will not address the Defendants' judicial estoppel argument as the Court has found the Plaintiff has failed to state a claim for aiding and abetting fiduciary duty upon which relief can be granted.

to File a Second Amended Complaint with regard to the claim alleging aiding and abetting a breach of fiduciary duty, with prejudice.[3]

### 3. Breach of Contract

In addition to its aiding and abetting claims, the Plaintiff brings a claim against the Defendants for breach of contract as an intended third party beneficiary. This claim was initially raised in the Plaintiff's original complaint and was omitted from the Plaintiff's First Amended Complaint.

There are several issues with regard to this claim. First, the Court must determine whether it has jurisdiction over the proposed breach of contract claim or whether this is a core proceeding that should be pursued by the Bankruptcy Trustee in the Mexican proceeding. Second, the Court must determine whether the factual allegations in the Second Amended Complaint present a

---

[3] A court may deny leave to amend a complaint with prejudice if the amendment would be inequitable or futile. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). The Court finds that Plaintiff's aiding and abetting breach of fiduciary duty claim should be dismissed with prejudice. The Plaintiff has already amended the complaint twice and the deficiencies of the amended complaint as to this count appear to be incurable given the alleged facts. In addition, it would be inequitable to the Defendants to require them to oppose any further proposed amended versions of this claim. See Perlmutter v. Salton, Inc., No. 09-690, 2010 WL 3834040 at *5 (D. Del. September 24, 2010)(denying leave to amend where the plaintiff had previously amended the complaint and the deficiencies considered incurable). Therefore, Plaintiff's motion for leave to file a Second Amended Complaint alleging an aiding and abetting breach of fiduciary duty claim is denied with prejudice.

plausible basis for relief.  Third, the Court must analyze whether this breach of contract claim will relate back to the date of the original complaint under Fed. R. Civ. P. 15(c) or alternatively, whether the claim is barred by the statute of limitations.  Next, the Court must analyze whether the breach of contract claim violates the previous order of this Court permitting the Plaintiff to amend its pleadings after the first motion to dismiss was granted.  Finally, the Court must determine whether the Plaintiff should be judicially estopped from alleging the existence of a special deposit agreement.

a. Jurisdiction

First, the Court will address whether it has jurisdiction to hear Plaintiff's proposed breach of contract claim.

The main issue is whether the Plaintiff's breach of contract claim is properly brought in the instant action or if it qualifies as a core proceeding involving Majapara's bankruptcy estate.  Typically, in a domestic bankruptcy proceeding, this issue would be resolved by the Bankruptcy Court pursuant to 28 U.S.C. § 157(b)(2).  This statute provides:

> (b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.
> (2) Core proceedings include, but are not limited to--
> (B) allowance or disallowance of claims against the estate or exemptions from property of the estate ...

28 U.S.C. § 157(b)(1),(2)

However, the United States Bankruptcy Court for the Northern District of Illinois issued an order recognizing the Mexican liquidation proceeding as a foreign main proceeding under Chapter 15 and entered an order dismissing the Chapter 11 Case and granting related relief pursuant to 11 U.S.C. § 1521.[4] (Rostocki Aff., Ex. 3 and 4.)

The order issued by the United States Bankruptcy Court for the Northern District of Illinois contains several provisions pertinent to determining whether this Court has jurisdiction to hear the Plaintiff's breach of contract claim. The order clearly states:

> The commencement or continuation of an individual action or proceeding concerning the Debtor's assets, rights, obligations or liabilities, including the Litigation, are stayed pursuant to § 1521(a)(1) to the same extent such actions were stayed in the Chapter 11 Case. . . .

> The Trustee is entrusted pursuant to § 1521(a)(5) with the authority to administer and realize all of the Debtor's assets within the territorial jurisdiction of the United States.

(Rostocki Aff., Ex. 4, Order Dismissing Chapter 11 Case and Granting Related Relief Pursuant to 11 U.S.C. § 1521 at ¶¶ 2, 10.)

Here, the Plaintiff's breach of contract claim is based on

---

[4] The Bankruptcy Court's recognition of the Mexican proceeding as a foreign main proceeding was granted over the Plaintiff's objection. (Rostocki Aff., Ex. 4.)

the Defendants' refusal to turn over the Funds, plus interest, that, according to the Second Amended Complaint, belong to the Plaintiff.  This argument is premised on the assumption that the Funds are not part of Majapara's estate.  However, this is not an assumption that this Court is authorized to make at this time.

Whether the Funds are an asset of Majapara's bankruptcy estate is an issue that must be resolved by the Mexican Bankruptcy Court in the foreign main proceeding.  Indeed, any action "concerning the Debtor's assets, rights, obligations or liabilities . . . are stayed pursuant to § 1521(a)(1)." (Rostocki Aff., Ex. 4.).

Further, the Plaintiff has already successfully filed a claim against Majapara's estate for the Funds in the Mexican Bankruptcy proceeding. ((Rostocki Aff., Ex. 6 at 35-36.)  The Mexican Bankruptcy Court has concluded that the Plaintiff's $2.5 million funds plus interest are a claim against Majapara's estate.

The Sixth Circuit's decision in <u>Amedisys, Inc. v. National Century Financial Enterprises, Inc. (In re National Century Financial Enterprises, Inc.)</u>, 423 F.3d 567 (6th Cir. 2005), is instructive.  In <u>Amedisys</u>, the Sixth Circuit was confronted with a lawsuit brought by a corporation against a bank seeking to recover about $7.3 million in accounts receivable held by the bank.  <u>Id.</u> at 569.  However, the bank held these accounts

receivable in a collection account under the name of a non-party corporation who had filed for bankruptcy. Id. The non-party debtor's bankruptcy proceedings were pending at the time the plaintiff corporation filed its complaint. Id. The Bankruptcy Court had determined that the bank's account was property of the debtor's estate and rejected the argument that the accounts receivable belonged to the plaintiff corporation. The Bankruptcy Court's determination was on appeal at the time the Sixth Circuit decided whether to stay the plaintiff corporation's civil suit. Id. at 577.

In determining whether to stay the proceedings pursuant to the automatic stay provision, 11 U.S.C. § 362(a)(3), the Sixth Circuit held that "'[p]roperty of the estate' includes "all legal or equitable interests of the debtor in the property as of the commencement of the case.'" Id. at 574 (citing 11 U.S.C. § 541(a)(1)). Specifically:

> Because the [state court] action seeks to obtain the amounts receivable held in a JP Morgan account in the name of [the debtor] and because the accounts receivable likely constitute property of the bankruptcy estate, the bankruptcy court properly enforced the automatic stay under 11 U.S.C. § 362(a)(3). . . . [T]he [state court] complaint naming non-debtor JP Morgan as a defendant, seeks a determination that the money in the Debtors' bank accounts belongs to [the plaintiff].

Id. at 575. The Sixth Circuit found that the plaintiff in both the state court action and the bankruptcy action "seeks to obtain possession of the disputed accounts receivable" by alleging in

the state court action breach of implied contract, unjust enrichment, and third party beneficiary claims, among others. Id. at 575. The Sixth Circuit therefore held that the state court action was subject to the automatic stay pending the outcome of the bankruptcy proceedings. Id. at 579.

The Court finds this reasoning equally applicable here. In this case, the Plaintiff is seeking to recover the same $2.5 million in both the Mexican Bankruptcy proceeding and this federal court action. A determination of the Plaintiff's breach of contract claim and unjust enrichment claim necessitates a finding that the $2.5 million currently held in the Defendants' bank in Majapara's account are not part of Majapara's bankruptcy estate and instead belong to the Plaintiff. As in Amedisys, although this action does not name the debtor as a defendant, Majapara is the real party in interest and a determination in this action against Defendants would have an adverse impact on the property in Majapara's estate. "An action taken against a nondebtor which would inevitably have an adverse impact upon the property of the estate must be barred by the [§ 362(a)(3)] automatic stay provision." Id. at 578 (citing Licensing by Paolo, Inc. v. Sinatra (In re Gucci), 126 F.3d 380, 392 (2d Cir. 1997)).

However, dismissal of Plaintiff's breach of contract claim and unjust enrichment claim are not warranted if these claims are properly alleged and not otherwise barred. The proper remedy is

to stay these claims pursuant to the United States Bankruptcy Court for the Northern District of Illinois order recognizing the Mexican Bankruptcy proceeding as a foreign main proceeding under Chapter 15 and staying litigation concerning the Debtor's assets, rights, obligations or liabilities pursuant to § 1521(a)(1).

Therefore, the Court has jurisdiction to permit the Plaintiff to amend its complaint to include a breach of contract claim; however, if permitted, such claim will be stayed pursuant to § 1521(a)(1) to the same extent such actions would be stayed in a Chapter 11 Case pursuant to 11 U.S.C. § 362(a)(3).

> b. Sufficiency of the Allegations and Relation Back

Under Delaware law, a breach of contract claim requires proof of three elements: (1) the existence of a contract; (2) a breach of an obligation imposed by that contract; and (3) resulting damage to the plaintiff. VLIW Tech., LLC v. Hewlett-Packard Co., 840 A.2d 606, 612 (Del. 2003).

The Plaintiff alleges that Majapara and the Defendant WBD entered into a special deposit agreement for the direct benefit of Plaintiff as an intended third party beneficiary. (Sec. Amend. Comp. ¶¶ 112, 114). The Plaintiff alleges that Majapara regularly executed special deposit agreements with the Defendants when the funds deposited pertained to third parties. (Sec. Amend. Comp. ¶ 111).

Next, the Plaintiff alleges Defendants breached their

contractual obligations by refusing to return to Majapara the funds identified to them as the Plaintiff's. (Sec. Amend. Comp. ¶ 117).

Finally, the Plaintiff alleges that it was harmed by the Defendants' breach in an amount in excess of $2.5 million, the amount of its deposits. (Id. at 119).

These factual allegations present a plausible basis for relief and gives the Defendants "fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Therefore, Defendants' motion to dismiss Plaintiff's breach of contract claim is denied.

The issue remains whether the Plaintiff's claim for breach of contract can relate back to the date of the original filing. If the claim does not relate back, then the parties agree that it is barred by the statute of limitations.

Fed. R. Civ. P. 15(c) provides the analysis for when an amendment to a pleading relates back to the date of the original filing. Specifically, the rule states that "an amendment to a pleading relates back to the date of the original pleading when the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).

In this case, the Plaintiff raised a breach of contract claim in their original pleading. In addition, the breach of

contract claim arises out of the same transaction as do the rest
of Plaintiff's alleged claims; specifically, Plaintiff's $2.5
million transaction with Majapara and Majapara's subsequent
transaction with the Defendants involving Plaintiff's Funds.

Therefore, Plaintiff's breach of contract claim relates back
to the date of the filing of Plaintiff's original pleading.  As a
result, there is no statute of limitations issue.

c. Effect of March 9, 2011 Order

This Court's order of March 9, 2011 stated that the
Plaintiff was permitted to "move to file a second amended
complaint that corrects the deficiencies identified herein."
[Docket Item 38.]  In the accompanying opinion, this Court stated
that Plaintiff's unjust enrichment claim was improper because
"there is a valid contract governing the Wachovia account, and
Capitaliza-T' has a remedy against Majapara, and potentially a
remedy at law against Defendants." [Docket Item 37 at 21.]

A deficiency in the Plaintiff's First Amended Complaint was
that it brought an unjust enrichment claim where the Plaintiff
should have pled a breach of contract claim, or in the
alternative, allege that the contract at issue is void.  By
amending its complaint to include a breach of contract claim, the
Plaintiff was well within the parameters of this Court's March 9,
2011 order.  The Court rejects Defendants' argument that allowing
Plaintiff to include a breach of contract claim in its Second

Amended Complaint violates that order.

                    d. Judicial Estoppel

        Judicial estoppel is not warranted in this case.
Importantly, "judicial estoppel is an extreme remedy, to be used
only when [a party's] inconsistent positions are tantamount to a
knowing misrepresentation to or even fraud on the court." Chao v.
Roy's Constr. Inc., 517 F.3d 180, 186 n.5 (3d Cir. 2008)
(internal quotations and citations omitted).  The doctrine is
applicable only where "the party in question [has] adopted
irreconcilably inconsistent positions[,] . . .the party [has]
adopted these positions in 'bad faith[,]'. . . and . . . no
lesser sanction would be sufficient."  Id. (citation omitted).

        The Defendants argue that the Plaintiff should be judicially
estopped from alleging the existence of a special deposit
agreement.  Specifically, the Defendants argue that the Plaintiff
represented to the Mexican Bankruptcy court that it made money
deposits with Majapara and did not mention the Defendants.
Therefore, to allow the Plaintiff to allege the existence of a
special deposit agreement between the Defendants and Majapara
with the Plaintiff as the intended third party beneficiary in
this case would be inconsistent with the representations by the
Plaintiff to the Mexican Bankruptcy proceeding.  The Court finds
this argument unpersuasive.

        In this case, Plaintiff's breach of contract claim is not

irreconcilably inconsistent with its claims in the Mexican Bankruptcy proceeding. While Plaintiff did represent to the Mexican Bankruptcy Court that it had deposited funds with Majapara, it also claimed that these funds were investments. Moreover, the lesser precaution of staying the instant claim pending the outcome of the Mexican Bankruptcy proceeding is appropriate and will prevent the Plaintiff from receiving a double recovery. See Amedisys, 423 F.3d at 577 (upholding stay of civil action while determination of debtor's estate by the Bankruptcy Court was on appeal).

Therefore, judicial estoppel is inappropriate.

### e. Conclusion

The Plaintiff will be permitted to amend his complaint to include a breach of contract claim. However, such claim, when filed, will be stayed pursuant to § 1521(a)(1) pending the outcome of the Mexican Bankruptcy proceeding.

### 4. Unjust Enrichment

As explained in the Court's previous opinion [Docket Item 37], the elements of an unjust enrichment claim under Delaware law are "(1) an enrichment; (2) an impoverishment; (3) a relation between the enrichment and the impoverishment; (4) the absence of justification; and (5) the absence of a remedy provided by law." B.A.S.S. Group, LLC v. Coastal Supply Co., Inc., Civil Action No. 3743-VCP, 2009 WL 1743730, at *6 (Del. Ch. June 19, 2009).

In this case, the Plaintiff has properly pled the required elements of an unjust enrichment claim. First, the Plaintiff alleges the Funds were deposited into the Defendants' bank accounts by Majapara. (Second Amend. Compl. ¶ 123.) Second, the Plaintiff's allege the Defendants' refused to return the Funds to the Plaintiff when requested to by Majapara and subsequently the Plaintiff. (Second Amend. Compl. ¶ 127.) Third, the Plaintiff's Second Amended Complaint maintains that the Defendant knew the Funds belonged to the Plaintiff and were proceeds of fraud. (Second Amend. Compl. ¶ 125.) Fourth, the Plaintiff maintains that the Defendants had no reason to retain the Funds and instead have been using the Funds to their own benefit without justification. (Second Amend. Compl. ¶¶ 129-30.) Finally, the Plaintiff pleads, in the alternative to his breach of contract claim, that no remedy at law exists. (Second Amend. Compl. ¶ 135.)

While a "claim for unjust enrichment is not available if there is a contract that governs the relationship between parties that gives rise to the unjust enrichment claim." Kuroda v. SPJS Holdings, L.L.C., 971 A.2d 872, 891 (Del. Ch. 2009), a plaintiff may plead alternative claims for relief, regardless of consistency. Fed. R. Civ. P. 8(d)(3)("A party may state as many separate claims or defenses as it has, regardless of consistency").

In this case, the Plaintiff is not wedded to his breach of contract claim as an intended third party beneficiary at the expense of his unjust enrichment claim. Moreover, Plaintiff's contract claim as a third-party beneficiary may not be meritorious in the end, and therefore the possibility for pleading unjust enrichment as an alternative should not be ruled out. The Plaintiff's Second Amended Complaint sets forth sufficient factual allegations to support a claim for unjust enrichment and is permissible as an alternative pleading. This is in contrast to the Plaintiff's first amended complaint which was the subject of the Court's previous order of dismissal. In the Plaintiff's first amended complaint, the Plaintiff pled only an unjust enrichment claim and failed to state any allegations addressing the existence of the deposit contract. Here, the Plaintiff adequately addresses the existence of a bank deposit agreement in its breach of contract claim and relies on unjust enrichment as an alternative pleading.

However, a determination of Plaintiff's unjust enrichment claim does necessitate a finding that the $2.5 million currently in the Defendants' bank accounts are not part of Majapara's bankruptcy estate and belong to the Plaintiff. As discussed above, dismissal of Plaintiff's unjust enrichment claim is not warranted and the proper remedy is to stay this claim pursuant to the United States Bankruptcy Court for the Northern District of

Illinois order recognizing the Mexican Bankruptcy proceeding as a foreign main proceeding under Chapter 15 and staying litigation concerning the Debtor's assets, rights, obligations or liabilities pursuant to § 1521(a)(1).

Therefore, the Plaintiff's Motion for Leave to File a Second Amended Complaint with regard to Plaintiff's claim for unjust enrichment will be granted but such claim, once filed, will be stayed pending the resolution of the Mexican Bankruptcy proceeding.

## IV.  CONCLUSION

For the reasons expressed above, the Plaintiff's Motion for Leave to File a Second Amended Complaint is granted in part and denied in part.

The Plaintiff will be permitted to file the proposed claim for aiding and abetting fraud as the factual allegations in the Second Amended Complaint present a plausible basis for relief and satisfy the requirements of Rule 8.

Plaintiff will not be permitted to file a second amended complaint alleging a claim for aiding and abetting breach of fiduciary duty as the proposed count fails to state a claim upon which relief can be granted.  This denial is with prejudice as the Plaintiff has already amended its complaint twice, the deficiencies of the Second Amended Complaint as to this proposed

claim appear to be incurable and it would be inequitable to the parties to allow further amendment.

Plaintiff will be permitted to file a second amended complaint alleging a claim for breach of contract; however, this claim will be stayed pending the resolution of the Mexican Bankruptcy Proceeding pursuant to 28 U.S.C. § 1521(a)(1).

Plaintiff will be permitted to file a second amended complaint alleging a claim for unjust enrichment, pleading in the alternative to its contract claim; however, this claim will likewise be stayed pending the resolution of the Mexican Bankruptcy Proceeding pursuant to 28 U.S.C. § 1521(a)(1).


**December 20, 2011**                        **s/ Jerome B. Simandle**
Date                                         JEROME B. SIMANDLE
                                             United States District Judge